60

(No. 5074— 

Wayne E. Justice, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed February 17, 1967.*

Stifler and Snyder, and Atchison and Koeneman, Attorneys for Claimant.

William G. Clark, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

Pezman, J.

Claimant seeks to recover the sum of $25,000.00 as damages for injuries sustained by him on the 21st day of November, 1960, while an inmate at the Menard Branch, Illinois State Penitentiary, alleging various acts of negligence of respondent.

Paragraph 8 of said complaint is as follows:

"8. That at the time and place aforesaid respondent, the State of Illinois, by and through its agents in that behalf, committed one or more of the following acts or omissions:

a. Provided a machine for the cutting of tobacco, which machine was unsafe;

b. Required claimant to work on an unsafe machine;

c. Added to the tobacco cutting machine a certain foot operating mechanism, which mechanism was unsafe and dangerous;

d. Provided a tobacco machine, which was an inherently dangerous instrumentality;

e. Established working conditions for the tobacco cutting machine and the tobacco shop at the Menard Penitentiary, which conditions were unsafe;

f. Did not give proper instructions as to the proper operation of the tobacco cutting machine;

g. Did not properly supervise the working conditions at the tobacco shop at the Menard Penitentiary;

h. Did not provide proper safety switches for said tobacco cutting machine;

i. Provided a machine, which was defective.''

On the 21st day of November, 1960, claimant, Wayne E. Justice, was serving a sentence imposed upon him by the Circuit Court of Vermilion County, Illinois. He was an inmate of the Menard Branch of the Illinois State Penitentiary, and was assigned to work in the tobacco shop at Menard. On the date of the accident claimant was working as a mechanic in that shop, and had worked there for approximately three and one-half years. His regular duties were to repair the machinery used in the tobacco shop, and he worked at these duties five days per week.

On the above date, at approximately 8:00 in the morning, he arrived at the tobacco shop, put on his work clothes, and proceeded to work on a machine known as a ''lumper''. This particular machine is used to mold loose tobacco leaves into a plug. The molding is accomplished by means of hydraulic pressure, and in operation the machine exerts about 8,000 pounds of pressure in order to mold the tobacco. Attached to the ram of the machine is a ''shaper'', which is a rectangular piece of steel about four by ten inches. It is turned up on the edges, and fits into the mold at the bottom of the machine.

The shaper is connected to the ram by bolts. This machine was used to pound or ram tobacco leaf into the shape of a plug. It had two hand levers with black knobs at the front, and was normally operated with one hand on each of these black knobs. The method of operating the machine was changed prior to the injuries sustained by claimant. In order to free one of the operator's hands so that production could be increased, the hand lever on the right side was chunked or blocked off, thus allowing the machine to be operated by the use of the left hand only. At a later date another innovation to further speed up the operation of the machine was introduced, which consisted of a wire running from the left hand lever attached to the black knob to a foot pedal on the floor, so that, when the operator pressed his foot on the pedal, the lever with the black knob was pulled down operating the plunger or ram. This was the method of operation on the day of the accident.

On the morning of the accident in question claimant had removed the shaper from the lumper, had cleaned loose tobacco from the same, and was returning it to the machine. Claimant testified that there was no one else around, and that, when he removed the shaper, the foot pedal and wire were not hooked up to the left hand lever. There is testimony that the foot pedal was disconnected each evening after the tobacco shop closed down. Claimant further stated that, when he returned from washing the metal piece or "shaper", he did not notice whether the foot pedal had been connected. He testified that, when he returned, the machine operator had not yet come into the shop, nor was anyone else near the operating mechanism of the machine. He said he placed the shaper against the ram with his left hand, and started to tighten the set screws with his right hand. As he was tightening

these screws, the machine operated and crushed his left hand. Claimant was hospitalized in the prison hospital, and was attended by the prison physician. On the day of the accident the doctor amputated the ring finger at the middle joint, and removed the bone from the tip of the little finger. The index and middle fingers were sutured and wired in an attempt to repair them, but four days later the doctor had claimant taken to the operating room, and at that time the middle and ring fingers were amputated. This amputation was of the "Guillotine type", and the fingers were cut off right next to the hand, or in the proximal phalanx. Some two months later it was necessary to surgically repair one of the stumps, and this revision was performed by the prison physician.

Claimant alleges that respondent was negligent, and in paragraph 8 of his complaint sets forth the purported acts of negligence. All involve the nature of the machine being operated, as well as the working conditions permitted while a potentially dangerous machine was in operation. The machine was purchased by the State from the manufacturer, and the tobacco shop supervisor, Mr. Henson, was on the job in the tobacco shop at the time the machine was installed. When it was received in the tobacco shop at the Menard Branch, it was fitted with two levers, which extended from the front of the machine, and were used to operate the machine, necessarily occupying both the left and the right hands. The operator stood in front of the machine, and dumped loose tobacco into the mold. After this, he would shut a gate on the front of the mold, and then by pressing both of the levers the ram with the shaper on the end of it would come down, and mold the tobacco into a plug. The testimony reveals that in order to speed up production the

tobacco shop instituted two innovations upon the machine prior to the time that claimant was injured. One, the right hand lever was blocked into operating position by the insertion of a chunk of wood or by wiring it down, so that the machine could be operated with one hand, the left. Later, a foot pedal was rigged to connect to the left lever, so that that lever could be activated by the left foot leaving the left hand free, as well as the right. Superintendent Henson, industrial foreman of the tobacco shop, testified that he told the inmates not to use the board.

"Q. Did you ever tell anyone not to use this foot lever?

A. Yes, I told them not to, but I just didn't stick hard enough, I guess.

Q. Is it still being used?

A. It is still being used, yes."

The negligence of respondent is sustained by the testimony of the Superintendent of the tobacco shop who readily admits that the purpose of having two hand levers at the front of the machine with the black knobs was to prevent an accident of the nature that occurred to claimant. It is the opinion of the Court that claimant has established adequate negligence on the part of respondent under the issues raised by the allegations, which were set forth in paragraph 8 of the complaint. In *Morris* vs. *State of Illinois,* 23 C.C.R. 91, this Court stated as follows:

"However, if it appears from the evidence that claimant was assigned to work under unsafe conditions, was not guilty of contributory negligence, and was injured, respondent would be guilty of negligence."

Claimant testified that he had worked on the ma-

chine before and had taken the shaper off of the ram on other occasions. He stated that he was a mechanic, and knew how the machine operated. On the morning in question, he turned the power on to the machine by flipping a switch on the east wall. He testified that he had the shaper on the ram with his left hand holding it up to the ram with two set screws snugged up, and that he reached around with the right hand, and pushed the button that would start the machine. He also testified that he didn't know whether the foot lever was hooked up to the lever on the left side, but did know it wasn't hooked up when he first arrived at the tobacco shop. Testimony further reveals that the gate on the mold was off of the machine at the time of the accident; that the gate was there for safety protection; and, that it would not be possible to get a hand into the mold when the gate was closed. Hoyt Brewer, a fellow inmate, who had known claimant for some time, and who had worked in the tobacco shop for several years, testified that, when he heard claimant holler, he tried to get his foot off the pedal, and noticed that there was a wire between the hand operating lever and the foot lever, which was connected. Claimant was thoroughly familiar with the operation of the machine even in its changed condition, and the testimony of Hoyt Brewer clearly established that the ram was set in operation by claimant.

This Court finds that claimant has clearly established negligence of respondent, but has failed to prove that he himself was free from contributory negligence. The claim is denied.